UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW J.,

        Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

CASE NO. C19-0980-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1976.[1] He completed high school and previously worked as a sales clerk, membership solicitor, and automobile salesperson. (AR 126, 148.)

Plaintiff protectively filed DIB and SSI applications on December 1, 2015, alleging disability beginning July 12, 2014. (AR 306, 313.) The applications were denied at the initial level

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

and on reconsideration. After postponing an initial hearing to allow plaintiff time to obtain a representative (AR 107-18), ALJ Kimberly Boyce held a hearing on January 8, 2018, taking testimony from plaintiff and a vocational expert (VE) (AR 119-52). On June 18, 2018, the ALJ issued a decision finding plaintiff not disabled. (AR 15-27.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 22, 2019 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff worked after the alleged disability onset date, but the work activity did not rise to the level of substantial gainful activity. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease (DDD), depression, and anxiety disorder severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, except that he can occasionally climb, stoop, kneel, crouch, and crawl, and can perform work in which concentrated exposure to hazards is not present. Also, in order to meet ordinary

and reasonable employer expectations regarding attendance, production, and work place behavior, plaintiff can understand, remember, and carry out unskilled, routine, and repetitive work that can be learned by demonstration and in which tasks to be performed are predetermined by the employer; can cope with occasional work setting change and occasional interaction with supervisors; can work in proximity to coworkers, but not in a team or cooperative effort; and can perform work that does not require interaction with the general public as an essential element of the job, but occasional interaction with the general public is not precluded. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a cleaner housekeeper, assembler, and packing line worker. The ALJ also concluded that, if even further limited to sedentary work, plaintiff could perform other jobs such as escort vehicle driver, document preparer, and assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing medical opinions, his symptom testimony, and in assessing the RFC and reaching the conclusion at step five. He requests remand for an award of benefits or, in the alternative, further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where the record contains contradictory doctor opinions, as in this case, the opinion of a treating or examining doctor may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A.  <u>Shannon Boustead, M.D.</u>

Dr. Shannon Boustead, plaintiff's primary care physician, completed evaluations of plaintiff dated October 1, 2015 (AR 472-76, 600-04) and November 13, 2017 (AR 551-55, 592-94). Dr. Boustead found plaintiff's lumbar spine/degenerate joint disease to severely impact work-related activities and limited him to sedentary work, with the ability to lift ten pounds maximum, frequently lift or carry lightweight articles, and walk or stand for only brief periods.

The record also contained a May 28, 2016 opinion of non-examining State agency doctor Howard Platter, M.D. (AR 186-87, 200-01.) Dr. Platter assessed plaintiff as able to perform a range of medium work, including occasionally lifting/carrying up to fifty pounds and frequently up to twenty five pounds, and to push and pull in those same amounts; able to stand and/or walk

ORDER
PAGE - 4

and to sit about six hours in an eight-hour workday; able to frequently climb ramps/stairs, kneel, crouch, and crawl, and occasionally climb ladders/ropes/scaffolds and stoop; should avoid concentrated exposure to hazards; and unlimited in relation to environmental limitations.

The ALJ gave some weight to the opinions of Dr. Boustead, but noted they consisted "merely of checked boxes, with no explanations or supportive evidence." (AR 23-24.) She gave the opinion of Dr. Platter partial weight, finding it partially consistent with the objective findings in the record. (*Id*.) The ALJ found the evidence to establish greater limitation than opined by Dr. Platter and, considering updated evidence and giving some weight to plaintiff's pain complaints and restrictions for which he was prescribed pain medication, found a light RFC more reasonable.

Plaintiff argues Dr. Boustead based his opinions on his examinations and the objective medical evidence. He states that, at the October 1, 2015 examination, Dr. Boustead observed plaintiff sitting at an angle and an inability to sit straight (*see* AR 566), and that the November 2017 opinion states that his back is a fixed deficit and that he needs psychological counseling (AR 553). He argues these examinations more than corroborate his complaints of chronic pain and mental health symptoms. However, the purported October 1, 2015 observations appear to reflect plaintiff's self-report. (*See* AR 442, 566 ("Feels he is unable to lift even 30lbs on some days. Even if he does this will have significant limitations later that day and following days. Pain is in low back. Sitting is quite difficult, sits at an angle, can't sit up straight. Dealing with pain every day. No weakness or radiation of pain.")) In fact, examination that day revealed reduced flexion and extension of mid lower I-spine, but no paraspinous muscle spasm, no swelling, edema, or erythema of surrounding tissue, negative straight leg raising, normal gait, and full strength in all extremities, and Dr. Boustead gave the following impression: "DSHS eval, would be limiting for heavy manual labor, not his primary limitation in my opinion, could be retrained (only will be limited by

psychological condition), xray shows really no changes, minimal [degenerative joint disease]." (AR 444.) Also, Dr. Boustead's November 2017 statements regarding back pain and counseling were provided in response to a question asking for a list of additional tests or consultations needed. (AR 553.) Neither this evaluation, nor the 2015 examination contain explanations or supportive evidence for the limitations assessed.

Pointing to other discussion of the medical record, plaintiff argues the ALJ mischaracterized and incorrectly stated the evidence. He points to the ALJ's statement that, in May 2017, Dr. Boustead found plaintiff's back pain "'controlled with Tramadol'" and "his physical examinations remained normal through 2017 with no joint tenderness, no deformity or swelling and full [range of motion (ROM)] in all extremities." (AR 22.) Plaintiff notes that one record cited in support of this conclusion contained a finding of positive for crepitus in the neck, minimal tenderness to palpation over right angle of jaw, a stricture at the right fourth flexor tendon in palm, with minimal tenderness to palpation (AR 573), while the other record shows he was clearly in pain given his receipt of a nonsteroidal anti-inflammatory injection and the referral for imaging and "LP" (lumbar puncture) (AR 577). He describes his pain as chronic and waxing and waning, and asserts the absence of substantial evidence support in the ALJ's reliance on "a day or two" when his symptoms were not as prevalent. (Dkt. 14 at 5.) He describes, with no further discussion, a November 30, 2015 treatment note in which he complained of anxiety, stress, back pain, depressed mood, and trouble sleeping, Dr. Boustead made a medication change to help with sleep, and plaintiff pursued mental health treatment. (AR 440-41.)

The ALJ appears to have erred in his citation to records showing normal 2017 back examinations in that both are dated in 2016. (*See* AR 573, 577.) In any event, neither record undermines the substantial evidence support for the ALJ's reasoning given that the positive

findings on examination relate, respectively, to TMJ syndrome/hand pain and an acute onset of headaches, not to plaintiff's back pain. (*See id.*) Moreover, a review of records post-dating the May 2017 assessment do, as found by the ALJ, reflect normal physical examination findings associated with plaintiff's back pain. (*See* AR 566-69 (November 13, 2017: continuing to describe chronic lumbar back pain as "[s]table, no changes" and finding no swelling, edema or erythema of surrounding tissue, no paraspinous muscle spasm and normal lumbosacral spine movements, and negative straight leg raising, but tender to palpation lower I-spine, and adding: "Tramadol controls pain, at stable dose for some years."); AR 561-62 (December 28, 2017: "Back pain no so bad but jaw pain significant when he lays down on left side. Also having left wrist pain[.]")) Accordingly, the ALJ's error in citations to the record is properly deemed harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"; the court looks to "the record as a whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

Nor does plaintiff demonstrate error in relation to the physical impairment opinion evidence. "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ reasonably assigned the opinion of Dr. Boustead only some weight upon finding it a "check-box" opinion, lacking explanation or supportive evidence. *Molina*, 674 F.3d at 1111 ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation

of the bases of their conclusions.'") (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Indeed, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. The ALJ reasonably took into consideration both Dr. Boustead's sedentary-work opinion and Dr. Platter's medium-work opinion, and afforded both some weight, while settling on a light-work determination as accounting for both the medical evidence as a whole and plaintiff's symptom testimony. The ALJ also identified sedentary jobs plaintiff could perform at step five and thereby accounted for Dr. Boustead's opinions.

B.  <u>T.C. Portman, Ph.D.</u>

Dr. T.C. Portman conducted a psychological/psychiatric evaluation of plaintiff on October 14, 2015. (AR 434-37.) Dr. Portman assessed marked and severe limitations in all basic work activities, and an overall severity rating of severe. (AR 436.) The record also contained opinions from non-examining State agency doctors Steven Haney, M.D., and Bruce Eather, Ph.D., dated March 10, 2016 and May 28, 2016. (AR 161-63, 172-74, 187-89, 202-03.) Drs. Haney and Eather found plaintiff's concentration, persistence, or pace diminished at times by depression and anxiety, but that he retained the ability to maintain attention and concentration sufficient to complete routine tasks over a normal eight-hour workday with customary breaks, capable of working with a few co-workers, and likely to interact cooperatively with supervisors. (*Id.*)

The ALJ assigned the opinions of Drs. Haney and Eather great weight, finding consistency with objective findings and plaintiff's own review of symptoms throughout the record. (AR 24.) The ALJ assigned the opinion of Dr. Portman little weight, contrasting the severe limitations assessed with the medical record. (*Id.*) In early 2015, plaintiff reported he was "doing much better . . . he is feeling overall relieved and not depressed." (AR 451.) Treatment notes from August

and October 2015 indicated normal psychiatric examinations and full orientation (AR 427-28, 433; *see also* AR 457), with normal behavior, judgment, and thought content (AR 433). Additional records indicated plaintiff was "stable" on medications and with current counseling schedule (AR 526) and, in a follow-up examination, he had "no particular complaints" (AR 541). "In fact, throughout 2016 and 2017, he was oriented to time, place and person with a depressed mood, but normal effect, his behavior was normal, and his judgment and thought content was normal." (AR 24 (citing AR 542, 570).) The ALJ concluded the medical records and objective findings supported the RFC and that treatment notes reflected improvement of limiting symptoms.

Plaintiff notes Dr. Portman observed his "shabby unkempt appearance", dysphoric mood, depressed affect, and excessive negative rumination. (AR 437.) He outlines the specific limitations assessed by Dr. Portman and asserts the ALJ failed to give legitimate reasons for giving great weight to the non-examining doctors. He states the review of symptoms information is usually completed by an unacceptable medical source such as a medical assistant and argues the ALJ should have compared the medical opinions to actual examinations and objective evidence.

The ALJ here reasonably found the record, including plaintiff's own reporting, findings on examination, and observations of providers as to effectiveness of treatment, inconsistent with the opinion of Dr. Portman. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ properly considers inconsistency with the record in rejection of medical opinions); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (claimant had never claimed to have problems with many of the conditions and activities the physician instructed her to avoid; upholding rejection of treating physician's opinion based on discrepancy between opinion and physician's description of claimant and prescribed conservative course of treatment). While the ALJ did not reject the opinion of Dr. Portman as unsupported by this doctor's own findings on examination, it

should be noted Dr. Portman also found plaintiff to have normal speech, cooperative attitude and behavior, and orientation, perception, fund of knowledge, concentration, abstract thought, and insight and judgment all within normal limits, and despite reported issues and questions regarding memory, performance in the normal range on word recall. (AR 437.) Contrary to plaintiff's suggestion, the ALJ was not required to provide further reasons for accepting the opinions of Drs. Haney and Eather. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician). *Cf.* Social Security Ruling (SSR) 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.") Plaintiff, for these reasons, does not demonstrate error in the consideration of the mental impairment-related opinions.

### Symptom Testimony

The rejection of a claimant's subjective symptom testimony[2] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record. (AR 21.) She found plaintiff's statements to affect his ability to work only to the extent they could

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 10

reasonably be accepted as consistent with the objective and other evidence of record. She offered several specific, clear, and convincing reasons in support of her conclusion.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject symptom testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ properly considers evidence associated with treatment, §§ 404.1529(c)(3), 416.929(c)(4); SSR 16-3p, including evidence of effective treatment. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Tommasetti*, 533 F.3d at 1039-40 (favorable response to conservative treatment undermined allegation of disabling nature of pain); and *Morgan*, 169 F.3d at 599-600 (contrary to plaintiff's claimed lack of improvement, physician reported symptoms improved with use of medication). An ALJ may also find evidence of a claimant's activities to undermine symptom testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009). *See also* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (including daily activities as a factor to be considered in relation to a claimant's symptoms).

The ALJ relied on an absence of supportive medical evidence, inconsistent medical

evidence, and evidence of effective treatment. (AR 21-22.) While the evidence for the period at issue was sparse, August 2015 treatment notes indicated a normal musculoskeletal examination, with no joint tenderness, deformity, or swelling, and full ROM in all directions. (AR 427-28.) In October 2015, plaintiff's diagnoses included lumbago and DDD. (AR 444.) X-rays of the lumbar spine showed "stable degenerative changes centered at L3-L4", but no evidence of spondylosis or spondylolisthesis and normal SI joints. (AR 444, 471, 599.) A 2011 MRI revealed progressive loss of intervertebral disc height and endplate osteophytosis, worse bilateral foraminal narrowing, now moderate at L3-4, and bilateral moderate foraminal narrowing secondary to peripheral disc end plate bulging at L4-5, but Dr. Boustead nonetheless noted plaintiff's pain was "controlled with Tramadol." (AR 21-22, 444.) As discussed above, Dr. Boustad continued to find plaintiff's back pain controlled with Tramadol as of May 2017 (AR 569), and physical examination remained normal through 2017, with no joint tenderness, deformity, or swelling, and full ROM in all extremities. The ALJ thus found plaintiff able to perform light work, modified as stated in the RFC, and no evidence supporting further limitation. (AR 22.)

With respect to mental impairments, in early 2015 plaintiff reported he was "doing much better . . . he is feeling overall relieved and not depressed." (AR 22, 451.) Treatment notes from August and October 2015 indicated normal psychiatric examinations and full orientation (AR 427-28, 433; *see also* AR 457), with normal behavior, judgment, and thought content (AR 433). While additional records from late 2015 included treatment from his primary care physician for depression and anxiety, throughout the records plaintiff was grossly normal, with normal affect and depressed mood, normal insight, memory, and judgment, and full orientation (AR 441). Mental health treatment initiated with Mark Tucker, LMHC, in April 2016 (AR 506-13) was brief and included a cancelled appointment and reports of stress related to plaintiff's girlfriend and

finances. (AR 512.) Additional records indicated plaintiff was "stable" on medications and with current counseling schedule (AR 526), and during a follow-up examination he had "no particular complaints" (AR 541-42). "In fact, throughout 2016 and 2017, he was . . . oriented to time, place, and person with a depressed mood, but normal affect, his behavior was normal, and his judgment and thought content was normal." (AR 22, 542, 570.) The ALJ again concluded plaintiff could perform work within the assessed RFC and no evidence of further limitation.

The ALJ also found plaintiff's activities to support the RFC assessed. (AR 22-23.) Two factors weighed against plaintiff's description of limited daily activities as strong evidence in favor of a disability finding. "First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (AR 22.) "Second, even if the claimant's daily activities are truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (AR 22-23.) The ALJ found the reported limited daily activities outweighed by other factors discussed. Plaintiff can attend to personal care needs, listen to music, watch television, play board games, wash dishes, vacuum, and prepare and cook simple meals (i.e. sandwiches and frozen dinners). (AR 23.) He can drive a car, "which requires focus, concentration, the ability to respond to stimuli from multiple directions at once and the ability to react quickly when necessary." (*Id.* (citing AR 330-37, 341-49, and hearing testimony).) Plaintiff also cares for his dog, including giving it food, water, and taking it outside. He reports trouble getting along with others, but can follow spoken and written instructions, get along with authority figures, goes shopping in stores, and visits with friends and family. When funds are available, he can pay his bills, count change, handle a savings account, and use a checkbook or money orders. He can read, write, and speak in English, and received his high school diploma.

Plaintiff points to his testimony of inability to afford medical care as explaining the sparse medical record. He notes the August 2015 note cited by the ALJ related to treatment for rectal bleeding, not back pain (AR 427-28), and the ALJ's failure to relate that the October 2015 record includes findings of tenderness to palpation mid lower l-spine and reduced flexion and extension (AR 444). Plaintiff adds that the record reflects his reports of racing/intrusive thoughts, very poor sleep, and difficulty sitting for long periods (*see, e.g.*, AR 367). He posits the imaging evidence of moderate disc space narrowing as objective evidence validating his lumbar pain and the fact he still requires strong pain medication as not undermining his subjective complaints. Plaintiff maintains the ALJ erred in failing to identify the specific allegations discounted in the consideration of his limited daily activities and in merely reciting her opinion of what he can do. He construes the decision as improperly relying on his ability to care for his dog as evidence he could get along with others. He maintains the ALJ improperly cherry picked a few activities and that the minimal activities relied upon do not support his ability to work.

Plaintiff does not, however, demonstrate error in the ALJ's consideration of either the medical record or the evidence of his activities. Plaintiff in large part proffers a different interpretation of the evidence, including evidence of effective treatment, without showing the ALJ's interpretation was not rational. The ALJ did not, moreover, reject symptom testimony based on an absence of treatment without considering possible reasons for the failure to seek or comply with treatment. *See* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.") *Cf. Tommasetti*, 533 F.3d at 1039 (symptom testimony may be rejected based on an unexplained or inadequately explained failure to seek or follow through with treatment). The ALJ instead noted

the evidence within the relevant time period was sparse and reasoned that the evidence failed to corroborate and was inconsistent with the degree of limitation alleged.

The ALJ also properly addressed and reasonably construed the evidence of plaintiff's activities. The ALJ both outlined plaintiff's symptom testimony and provided reasons for not accepting that testimony. (AR 21-23.) For instance, while plaintiff "reported trouble remembering, concentrating, following instructions, . . . and completing tasks" (AR 21), his activities included listening to music, watching television, playing board games, and he was able to drive a car, follow instructions, and manage his finances (AR 23). The ALJ did not point to evidence of plaintiff's ability to care for his dog as evidence of his ability to get along with others. (AR 23 ("In addition, he is able to care for his dog, including giving it food, water, and taking it outside. He reported trouble getting along with others, but he is able to follow spoken and written instructions; he gets along with authority figures and he is able to go shopping in stores and visit with friends and family.") (citations to record omitted). Nor did the ALJ merely recite her opinion of what plaintiff could do; she relied on plaintiff's own reporting (*see* AR 23 (citing AR 330-37 (function report) and AR 341-39 (disability report))).

The ALJ, in sum, provided the necessary reasons for not accepting plaintiff's symptom testimony. Her assessment is both rational and supported by substantial evidence.

### RFC and Step Five

RFC is the most a claimant can do despite limitations and is assessed based on all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An RFC must include the functional limitations supported by the record. *See Valentine v. Comm'r SSA*, 574 F.3d 685, 690 (9th Cir. 2009); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner."

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015). Hypothetical questions proffered to the VE "must 'set out all of the claimant's impairments.'" *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1278, 1279 (9th Cir. 1987)). If the record does not support the assumptions in the hypothetical, the [VE's] opinion has no evidentiary value." *Id.*

Plaintiff avers error in the RFC assessment, VE hypothetical, and decision at step five based on the alleged errors discussed above. Because the Court finds no error in the ALJ's assessment of the medical opinions, other medical evidence of record, or in the assessment of symptom testimony, there is no corresponding error in the RFC, VE hypothetical, or conclusion at step five. In other words, this mere restating of plaintiff's arguments does not suffice to establish error. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 5th day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge